**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

RENA ANNE RAMNARINE                    *

        Plaintiff                    *

        v.                    *        Civil Case No. PWG-17-cv-02261

RAINBOW CHILD DEVELOPMENT          *
    CENTER, INC., *et al.*

        Defendants                    *

**REPORT AND RECOMMENDATION**

This is a case concerning a childcare center's failure to adequately pay one of its employees in accordance with state law. Pending before the Court is Plaintiff Rena Anne Ramnarine's Motion for Attorney's Fees, ECF No. 154, and Bill of Costs. ECF No. 155. This case has been referred to my chambers for a report and recommendation. ECF No. 175. Upon review of the pending Motion and Bill of Costs, the responses thereto, and the Replies in support thereof, I recommend that the Motion and Bill be granted, in part, and denied, in part.

**BACKGROUND**

On August 9, 2017, Rena Anne Ramnarine filed a class action complaint against the Rainbow Child Development Center (RCDC), Rainbow Academy, Inc. (RA), Kim Terese Mitchell, LLC – three Maryland-based corporations that operate multiple child-care centers in the State – and Kim Terese Mitchell, owner of RCDC and RA. ECF No. 1, at 2-4. Plaintiff specifically alleged that Defendants employed her and other similarly situated individuals, working them in excess of forty hours per week while failing to pay them for all the hours they worked and failing to provide an increased rate for any overtime. *Id.* at 4. Among other things, Plaintiff alleged that

1

she and other teachers were required to attend mandatory meetings for which Defendants failed to lawfully pay them. *Id.* at 4-5. Given the numerous individuals which Plaintiff alleged were affected by Defendants' practices, Plaintiff sought class relief under the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. § 3-415; and the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., § 3-501, et seq. *Id.* at 2. Among other forms of relief, Plaintiff asked the Court to certify the case as a class action, enter judgment against the Defendants, award Plaintiff reasonable attorney's fees and costs, and enjoin Defendants from taking future similar actions in violation of federal and state labor laws. *Id.* at 9.

As both parties concede, the case was vigorously litigated over the course of the next four years. Perhaps not surprisingly, each side blames the other for this fact. *See* ECF No. 154-1, at 1 ("Although the case originally involved unpaid wages of only $9,042.00, Defendants aggressively defended it."); ECF No. 165, at 1 ("Ms. Mitchell reviewed the payroll records and sent Plaintiff a check for an amount greater than the amount of the judgment entered in this case four years after Ms. Ramnarine first made a claim."). On September 28, 2017, Defendants filed a Motion to Dismiss, ECF No. 13, arguing that Kim T. Mitchell, LLC, be dismissed from the case because the corporation was not Plaintiff's employer and because Plaintiff's complaint was "entirely devoid of factual support." *Id.* at 1-2. In response, Plaintiff filed an Amended Complaint, including more specific allegations regarding the amount that she was paid and the dates of some of the meetings for which she was not paid properly. ECF No. 18, at 4-7. On the same day, Plaintiff also filed an Opposition to Defendants' Motion for Partial Dismissal, arguing that it should be denied in its entirety. ECF No. 19, at 7. Although Kim T. Mitchell, LLC, was dismissed from the case,

Defendants' Motion was denied as Moot, given the filing of the Amended Complaint.  ECF No. 20.

On December 1, 2017, the case was referred to the Honorable Timothy J. Sullivan of this Court for mediation.  ECF No. 27.  While the parties were preparing for mediation, they also conducted discovery, including the litigation of disputed requests: 1) to Defendants' bank regarding Defendants' bank statements, ECF Nos. 29, 36, 40, and 48; 2) to Defendants regarding payment records for all teachers Defendants employed, ECF Nos. 31, 39, 42 and 46; and 3) to Defendants' former payroll company requesting Defendants' payroll records and tax forms.  ECF No. 49.  While these motions were pending and before the settlement conference could be conducted, Plaintiff sought leave to file a Second Amended Complaint, ECF No. 35, and filed a Motion for Class Certification.  ECF No. 43.  The Second Amended Complaint included allegations regarding the lack of payment to Infant and Toddler Teachers, Assistants to Preschool Teachers, and Infant Toddler Teacher Assistants, but deleted all allegations against Kim T. Mitchell, LLC.  ECF No. 35-3 at 3-4.

On March 7, 2018, the Honorable Gina L. Simms held a hearing in the case, after which the Court denied, as moot, the Motion to Quash regarding Defendants' bank statements, given Plaintiff's narrowing of her requests; and allowed Plaintiff to collect some discovery from the Defendants.  ECF No. 55.  Specifically, the Court allowed Plaintiff to conduct discovery regarding several categories of information related to Preschool Teachers.  *Id.* at 1.  However, the Court denied discovery regarding Infant Toddler Teachers and Infant Toddler Teacher Assistants.  *Id.* Although the Court deferred ruling on discovery related to Assistants to Preschool Teachers, *id.* at 1, it subsequently denied discovery as to this category, as well.  ECF No. 60.

On March 8, 2018, Plaintiff filed a Motion for Leave to File a Third Amended Complaint. ECF No. 56.  On March 9, 2018, the Court denied Plaintiff's Motion to File a Second Amended Complaint, finding that all amended allegations related to Infant Toddler Teachers, Assistants to Preschool Teachers, and Infant Toddler Teacher Assistants were futile, because they would prejudice Defendants and were beyond the scope of the original complaint.  ECF No. 59, at 4. Plaintiff subsequently withdrew her Motion for Leave to file a Third Amended Complaint, as well. ECF No. 62.  Plaintiff also filed a second Motion for Leave to file a Second Amended Complaint, adding allegations regarding the lack of payment for attendance at Mother's Day recitals, ECF No. 79, which the Court also denied.  ECF No. 88.  Plaintiff also raised objection to the Court's prior discovery rulings, ECF Nos. 55 and 60, which the Court overruled.  ECF No. 76.

On May 31, 2018, Defendants moved for summary judgment on the grounds that "Defendants' preschool teachers are exempt employees, as their primary duty is to impart knowledge and Rainbow Childhood Development Center is recognized by the Maryland Department of Education as an educational establishment."  ECF No. 84, at 2.  In response, Plaintiff cross-moved for summary judgment on the same issue.  ECF No. 90.

On July 26, 2018, the Court held Oral Argument on all pending motions.  At the conclusion of the Argument, the Court: 1) granted Defendants' Motion for Summary Judgment regarding Plaintiff's claims under the FLSA and Plaintiff's claims under Maryland state law that she was not paid sufficient amounts for overtime work; 2) denied Defendants' Motion for Summary Judgment as to Plaintiff's claim under state law that she was not paid at all for certain mandatory meetings; and 3) denied, as moot, Plaintiff's class claims under the FLSA.  ECF No. 95.  As the Court later noted: "These rulings leave one sole issue for adjudication: Plaintiff's MWPCL claims for unpaid regular hours at straight time rates."  ECF No. 109.  Plaintiff later asked to certify these rulings as

final judgments so that she could appeal these rulings.  ECF No. 102.  Although the Court acknowledged that the Court's rulings on the FLSA and overtime claims were "ultimate dispositions", "the relationship of the claims as well as judicial economy strongly favor[ed] delaying appeal until the appellate court can address all of Plaintiff's claims at once."  ECF No. 109, at 2.  On November 7, 2018, the parties met for mediation, but were unable to resolve the case.  ECF No. 100.

On August 2, 2019, Defendants filed a second Motion for Summary Judgment, arguing, this time, that Plaintiff could not recover under the MWPCL if she was a salaried employee who could not recover under the FLSA and MWHL.  ECF No. 112-1, at 5.  Alternatively, Defendants argued that there was no evidence that Plaintiff ever attended a mandatory meeting for which she was not paid.  *Id*.  On March 2, 2020, the Court denied the Motion, reasoning that Defendants misunderstood the Court's prior rulings and their lack of applicability to a teacher's claim that she was not paid for attending meetings.  ECF No. 122, at 4-5.  The Court held that "there remain material questions of fact regarding whether the lunch meetings were mandatory, the number and length of the meetings, and the computation of the actual compensable time due to Plaintiff.  This case shall proceed to trial."  *Id.* at 5.

Over the course of the next year, the parties began preparations for trial, including the submission of exhibit lists and separate pre-trial memoranda.  ECF Nos. 133-135, 137.  On May 19, 2021, the parties met once last time in an attempt to achieve a mediated resolution to the case.  ECF No. 140.  The mediation again proved unsuccessful.

Beginning on June 7, 2021, the Court held a three-day bench trial on Plaintiff's claim under the MPWCL that she was not paid for attending mandatory meetings.  ECF No. 142-44.  At the conclusion of trial, the Court entered a judgment in favor of the Plaintiff in the amount of

$2,389.50, together with reasonable attorneys' fees and costs pursuant to Md. Code Ann., Lab. & Empl. § 3-507.2(b).  ECF No. 145.  Counsel for the Plaintiff was directed to file any motion for attorneys' fees and costs in accordance with the Court's Local Rule 109.  U.S. District Court, District of Maryland. Md. L.R. 109 (D. Md. 2018).  *Id.*

On August 20, 2021, Plaintiff filed the Motion for Attorney's Fees currently pending before the Court and submitted a Bill of Costs.  ECF Nos. 154-55.  Specifically, Plaintiff moved for an award of attorney's fees of $151,611.91 and costs of $23,171.55.  ECF No. 154, 155.  Plaintiff's counsel acknowledged that it had not been successful on all of its claims: in part because of this, it had reduced its fees from the original amount of $470,125.00.  ECF No. 154-1, at 15-17.  On September 24, 2021, Defendants filed Oppositions to both the Motion for Attorney's Fees and the Bill of Costs.  No. 165-166.  Plaintiff subsequently filed multiple Replies in support of both the pending Motion and Bill.  ECF No. 170-171.  On May 27, 2022, the Motions were referred to my chambers for the limited purpose of a Report and Recommendation regarding the pending Motion for Attorney's Fees and Bill of Costs.  ECF No. 175.

## ANALYSIS

### I.      Attorney's Fees

Pursuant to Md. Code Ann. Labor and Employment 3-507(b)(2), if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee . . . reasonable counsel fees and other costs." In an action under the MWPCL, ordinarily, determinations about whether withholding an employee's wages is the result of a bona fide dispute and whether to award enhanced damages are questions for the trier of fact, while determinations about attorney's fees and costs are questions for the judge.  *Playmark Inc. v. Perret*, 268 A.3d 988, 1007 (Md. Ct. Spec. App. 2022) (citing

*Admiral Mortg., Inc. v. Cooper*, 745 A.2d 1026, 1036 (2000).  The Supreme Court has recognized that "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).

"To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs."  *Randolph v. PowerComm Constr., Inc.*, 780 Fed.Appx. 16, 21 (4th Cir. 2019) (per curium).  "Once a fee request is submitted, it becomes the responsibility of the party challenging the request to articulate the areas where an award would be inappropriate."  *Barnes v. NCC Business Services, LLC*, No. PJM-18-1473, 2019 WL 4141012, at *2 (D. Md. Aug. 30, 2019).  "[T]he Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge."  *Thompson v. U.S. Dept. of Hous. and Urban Dev.*, No. MJG-95-309, 2002 WL 31777631, at *10 (D. Md. Nov. 21, 2002).

To calculate an award of attorney's fees, a court first "determine[s] the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate."  *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)).  In determining the reasonableness of the billing rates and hours worked to be used in a lodestar calculation, the United States Court of Appeals for the Fourth Circuit has directed courts to consider the following factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "Johnson factors"):

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the

> amount in controversy and the results obtained; (9) the experience,
> reputation, and ability of the attorney; (10) the undesirability of the
> case within the legal community in which the suit arose; (11) the
> nature and length of the professional relationship between attorney
> and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 & n.5.   A court is not required to separately analyze each of the Johnson

factors if they are considered and addressed more broadly at some point in the decision.[1]  *See, e.g.,*

*Murrill v. Merritt*, No. DKC-17-2255, 2020 WL 1914804, at *3 (D. Md. Apr. 20, 2020); *Imgarten*

*v. Bellboy Corp.*, 383 F. Supp. 2d 825, 836 (D. Md. 2005).

The dispute between the parties centers on: 1) whether Plaintiff's proposed rates are

customary for like work; 2) the reasonableness of the amount of time and labor Plaintiff's counsel

expended; 3) the novelty and difficulty of the legal questions raised; 4) the skill required to

properly perform the legal services rendered; and 5) the amount in controversy and the results

obtained.  Accordingly, I will focus on these factors below.

## A.  Customary Rates for Like Work

The reasonable hourly rate requirement is typically met by compensating attorneys at

prevailing market rates in the community: a court ordinarily looks to "the community in which the

---

[1] Defendants, in passing, note the Court may simply dispense with any analysis of the relevant factors identified in *Johnson* and award no fees.  ECF No. 165, at 13.  In support, Defendants cite the U.S. Supreme Court's decision in *Farrar v. Hobby*, 506 U.S. 103 (1992).  *Farrar*, however, is limited to its facts.  In that case, Plaintiff sought millions of dollars in compensatory damages, but recovered only nominal damages.  As the Court in *Farrar* noted, the "litigation accomplished little beyond giving petitioners the moral satisfaction of knowing that a federal court concluded that their rights had been violated in some unspecified way."  506 U.S. at 114 (internal citations, quotation marks and brackets omitted).  In this case, although Plaintiff did not recover the entirety of the amount she sought, she still recovered thousands of dollars in unpaid wages.  Plaintiff's victory was not "technical."  *See Reyazuddin v. Montgomery County, Maryland*, No. DKC 11-951, 2022 WL 4608331, at *2 (D. Md. Sept. 30, 2022) (explaining that after *Farrar* a party may collect attorney's fees if their victory is "material," as opposed to "technical").  Furthermore, as this Court has acknowledged since *Farrar*, even if a plaintiff collects only nominal damages, she may still collect attorney's fees if the suit accomplished some "public goal" or if she succeeded on a significant legal issue.  *Id.*, at *9.

court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). This Court's Local Rules provide presumptively reasonable hourly rates tied to an attorney's years of experience. *See* D. Md. Local R. App. B(3); *Gonzalez v. Caron*, No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Plaintiff's counsel disputes whether Appendix B, in fact, represents the reasonable hourly rate awarded in the market at the current time. ECF No. 154-1, at 9. Accordingly, although Appendix B provides that an attorney with thirty-four years of experience, like Omar Vincent Melehy, be compensated at a rate of at most $475 per hour, Plaintiff asks that Mr. Melehy be awarded fees at a rate of $600 per hour. *Id.* at 9, 12. Likewise, Plaintiff asks that Suvita Melehy be compensated at a rate of $525 per hour, although Appendix B provides an applicable rate of $300 to $475 per hour. *Id.* Plaintiff also asks that paralegals and law clerks be compensated at a rate of $175 per hour, although Appendix B provides a range of $95 to $150 per hour. *Id.* Finally, Plaintiff asks that Andrew Balashov be compensated at a range of $300 per hour, which represents the maximum amount allowable under the guidelines given his years of experience. *Id.*

In support, Plaintiff cites only *Duvall v. O'Malley*, ECF No. 154-1, at 8, in which this Court allowed paralegals to be compensated at a rate $10 more per hour than the rate set forth in Appendix B.[2] No. ELH-94-2541, 2016 WL 3523682, at *14 (D. Md. June 28, 2016). However, unlike this case, the increase in *Duvall* was minimal. Here, Plaintiff seeks substantial increases

---

[2] In their Reply, Plaintiff's counsel also cites the Court's judgment in *Boyd v. SFS Communications, LLC*, No. 15-3068 PJM (D. Md. filed October 8, 2015). *Boyd* is distinguishable from this case in that the Plaintiffs were able to conditionally certify a class. *Boyd*, ECF No. 49 (D. Md. Jan. 27, 2017). Accordingly, it accords with the factors I sketch out below in which departure from the rates in Appendix B may be appropriate. Additionally, the parties stipulated to the awarding of rates which plaintiffs' counsel in that case requested. *Boyd*, ECF No. 196 (D. Md. Aug. 11, 2021).

well beyond the amounts presumed appropriate under the guidelines.  For example, Mr. Melehy

seeks $125 per hour more than the hourly rate recommended under the guidelines, amounting to

an almost twenty percent increase.  Further, in *Duvall*, the requesting party was not located in the

District of Maryland, but the District of Columbia.  *See id.* (noting that the requested increased

rate "appears consistent with prevailing market rates in the District of Columbia.").  Here, counsel

is based in the District of Maryland; thus, there is no similar geographic disparity.

Plaintiff additionally argues that the more appropriate metric is the U.S. Attorney's Office

Matrix, commonly known as the Laffey Matrix.  ECF No. 154-1, at 12.  This Court has held that

the Laffey Matrix is not "sufficient evidence of the prevailing market rate" in this jurisdiction or

other areas bordering the District of Columbia, which tends to have higher prevailing rates.  *Cross

v. Fleet Reserve Ass'n Pension Plan*, No. WDQ–05–0001, 2010 WL 3609530, at *5 n. 21 (D. Md.

Sept. 14, 2010), *Robinson*, 560 F.3d at 245; *Moreno v. PF Hurley, Inc.*, No. RWT–07–1515, 2009

WL 3208324, at *4 (D. Md. Sept. 29, 2009).

Plaintiff's counsel's arguments are further undercut by the fact that they have recently

sought and been awarded fees substantially less than they seek now.  In *Morataya v. Nancy's

Kitchen of Silver Spring*, Mr. Melehy requested and was awarded fees at a rate of $475 per hour.

No: GJH-13-01888, 2016 WL 6634856, at *3 (D. Md. Nov. 8, 2016).  In the same case, Suvita

Melehy sought and was awarded fees at a rate of $375 per hour.  *Id.*  Perhaps recognizing these

disparities, Plaintiff's counsel presents, among others, an affidavit from Joseph Espo, a partner at

Brown, Goldstein and Levy, who notes that since 2015 his hourly rate increased by approximately

twenty-five percent.  ECF No. 154-1, at 11, citing ECF No. 154-6, at 3.  The court may rely on

"affidavits from other attorneys attesting to the reasonableness of the hourly rates," but also the

court's "knowledge of the market."  *Beyond Sys., Inc. v. World Ave. USA, LLC*, No. PJM-08-921,

2011 WL 3419565 at *3-4 (D. Md. Aug. 1, 2011).   In the District of Maryland, "that 'market knowledge' is embedded in [Appendix B]."  *Chaten v. Marketsmart LLC*, Civ. No. PX-19-1165, 2020 WL 4726631, at *3 (D. Md. Aug. 14, 2020).   Although the rates in Appendix B are not binding, they are "presumptively reasonable."  *Id.* at *6.

Accordingly, this Court, just last year, rejected the same arguments from the same counsel. In *Carrera v. EMD Sales, Inc.*, which also originally started as a collective FLSA case, but ended in the awarding of unpaid wages,

> Plaintiffs argue[d] for upward departures . . . because the Appendix B rates, which were last updated in 2014, do not reflect current market rates for employment attorneys in Baltimore or in Maryland generally, and because the schedule does not adequately account for experience at or above [thirty] years, which has significant value in the market place.  As a result, Plaintiffs argue that the Court should refer to the United States Attorney's Office ("USAO") Matrix . . .

No. JKB-17-3066, 2021 WL 3856287, at *5 (D. Md. Aug. 27, 2021) (internal citations and quotation marks omitted).  Plaintiff's counsel relied on evidence very similar to that they present here:

> Plaintiffs' counsel argue that the rates they seek – while higher than those set forth in Appendix B – are below both prevailing market rates for employment attorneys in the Baltimore area and the rates that they charge fee-paying clients . . . Plaintiffs submit affidavits from Joseph Espo, a partner at Brown Goldstein & Levy, LLP ("BGL") in Baltimore . . .

*Id.* (internal citations and quotation marks omitted).  The Court rejected these arguments:

> [T]he fact that the Appendix B rates were set seven years ago is not automatically dispositive with respect to whether they reflect prevailing market rates in the community.  Indeed, this Court has awarded attorney's fees consistent with the Appendix B rates in other FLSA cases just this year.  Additionally, despite the contentions of Mr. Espo in his affidavit, this Court notes that it has recently decreased the hourly rates requested by BGL attorneys for their failure to conform to the guidelines set forth in Appendix B.

*Id.*

The Court has, likewise, rejected attempts to significantly depart upwards beyond the rates provided in the guidelines by other attorneys. *See Gaither v. Davi Transportation Services, LLC*, No. ELH-18-1447, 2020 WL 2614783, at *12-13 (D. Md. May 22, 2020) (rejecting request that an attorney admitted ten years ago be compensated at $550 per hour; that attorneys admitted three years ago be compensated at $300 and $315 per hour, and that paralegals be compensated at $260 per hour).  Where the Court has departed upwards, it has been in amounts less than that Plaintiff requests here. *See Gaitan v. Ahmed*, No.: CBD-16-0303, 2016 WL 8670038, at *3 (D. Md. July 15, 2016) ("As counsel represents, at counsel's hourly rates, the total fees amount to $12,593.50. If the Appendix B rates would have been applied, the total fees amount to $11,198.  As part of the settlement agreement, counsel is only requesting $7,000 in attorney's fees.") (internal citations omitted).

Nonetheless, while I do not recommend that the Court accept Plaintiff's arguments as to why the Court should award rates above those recommended in Appendix B, I recognize that Plaintiff's arguments provide strong reason to provide Plaintiff's counsel the highest available rate under Appendix B. *Gonzalez v. New York Mart, MD, Inc.*, No. TDC-20-0020, 2022 WL 3577394, at *3 (D. Md. Aug. 19, 2022) ("[T]he argument that billing rates have increased since the adoption of the present Local Rules guidelines and [counsel's] higher standard hourly rate both provide support for the high-end rate of $425 per hour.").  Accordingly, I recommend that Omar Vincent Melehy's rate and Suvita Melehy's rates be reduced to $475 per hour.  I recommend that Andrew Balashov be compensated at $300 per hour, as he has requested.  Finally, I recommend that the paralegal and law clerk rate be reduced to $150 per hour.

Additionally, while I do not recommend that the Court accept Plaintiff's request for higher rates in this particular case, this is not to say that, in a different case, a departure – even a significant one – may not be appropriate. As this Court has acknowledged, while the guidelines are presumptively reasonable, they are not binding. For example, in an action such as *Duvall*, in which counsel: 1) undertook representation of a party who otherwise may not be able to find representation; 2) was able to achieve significant systemic reform; 3) establish significant new legal precedent; and/or 4) successfully certify a class, a significant departure may be appropriate. 2016 WL 3523682, at *1 (noting that Plaintiffs sought fees in a "long-running class action initiated by detainees at the Baltimore City Detention Center.").

### B. Time and Labor Expended

In order to recover attorney's fees, counsel must submit appropriate materials supporting its request. This typically includes time records and affidavits regarding the services provided. Since reasonableness is the touchstone for the award of fees, the party seeking the award of fees "must provide 'detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, Civ. No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. Jun. 23, 2016).

In this case, Plaintiff's counsel submit that they devoted the following hours to the following tasks: 1) 24.90 hours for pre-summary judgment case development which counsel reduced by fifteen percent because of the high level of staffing for the class claim – which ultimately was not successful – and then by another forty percent to account for the relative lack of success of the overall case, ECF No. 154-1 at 19; 2) 3.7 hours for post-summary judgment case development which counsel reduced by five percent to account for the fact that although Plaintiff prevailed on all of its post-summary judgment claims, she did not collect the total amount of wages

sought, *id.* at 20; 3) 11.7 hours for the drafting of pleadings which Plaintiff reduced by fifteen percent based on the relatively high level of staffing of the case, and by an additional forty percent given the lack of success of several of the claims in the original complaint, *id.* at 20; 4) 64.3 hours for written discovery which Plaintiff reduced by twenty percent as part of a categorical reduction, by fifteen percent as part of an across-the-board reduction, and then by an additional forty percent, *id.* at 22; 5) 104.2 hours for taking thirteen depositions and defending the deposition of the Plaintiff, which counsel reduced by fifteen percent and then by an additional forty percent, *id.* at 23; 6) 13.9 hours for pre-summary judgment alternative dispute resolution which counsel reduced by fifteen percent and then by an additional forty percent, *id.*; 7) 14.7 hours for post-summary judgment alternative dispute resolution which counsel reduced by five percent as part of an across-the-board reduction, *id.* at 24; 8) 51.10 hours for discovery motions practice which counsel reduced by twenty percent as part of a categorical reduction, and further reduced by fifteen and then forty percent as part of two across-the-board reductions, *id.* at 24-25; 9) 7.4 hours for pre-summary judgment dispositive motions which counsel reduced by fifteen and then forty percent to account for the fact that Plaintiff's Motion for Summary Judgment was unsuccessful, *id.* at 25; 10) 86.9 hours for post-summary judgment dispositive motions, which counsel reduced by ten percent as part of a categorical reduction and by a further five percent due to an across-the-board reduction, *id.* at 25-26; 11) 100.2 hours for trial preparation before an across-the-board reduction of five percent, *id.* at 26; 12) 27.4 hours for trial with a five percent reduction accounting for the fact that Plaintiff did not recover the entirety of the wages she sought, *id.* at 27; 13) 88 hours for drafting papers related to the motions for fees and costs, minus a categorical reduction of thirty percent and an additional five percent across the board reduction.  ECF No. 172, at 2.

Although Defendants raise concerns regarding several categories of fees, the strength of their arguments is undercut by the fact that they generally fail to identify any specific entries in support of their arguments and, in some cases, misread the relevant time entries.

### 1. Time Spent on Settlement Negotiations.

Regarding those entries related to mediation, Defendants argue that this time should be reduced because Plaintiff's "unreasonable demands" caused the mediation to fail.  ECF No. 165, at 10.  Although a district court "has discretion to consider settlement negotiations in determining the reasonableness of fees[,] . . . it is not required to do so."  *McAfee*, 738 F.3d at 90; *Thomas v. Nat'l Football League Players Ass'n*, 273 F.3d 1124, 1130 n. 9 (D.C. Cir. 2001).  However, before engaging in such an examination, courts must be conscious of the fact that a broad ranging inquiry into the parties' settlement positions would potentially conflict with the strong admonition given to all parties during every mediation that they, as well as the Court, must ensure that the substance of settlement negotiations remains confidential.  U.S. Dist. Ct., Dist. of Md., Local Rule 607.4 (2021) ("Unless otherwise agreed by the parties and the Court, no disclosure shall be made to anyone, including the judicial officer to whom the case is assigned.").  Inviting the presiding judge to later broadly inquire into the reasonableness of a party's settlement position when determining an award of fees would, at a minimum, create some tension with this Court's Local Rules.

Recognizing such, courts have approved consideration of a parties' settlement position during a determination of fees in a few limited circumstances, where: 1) the complaint was silent as to the total amount of damages sought, thus reference to settlement was necessary to determine the amount of damages the plaintiff originally sought, *Thomas v. Flanagan*, No. WDQ-13-0685, 2016 WL 258633, at *6 (D. Md. Jan. 20, 2016); 2) it is apparent the plaintiff failed to seriously

engage in settlement negotiations,[3] *McAfee*, 738 F.3d at 90-91; 3) the parties' conduct, along with other evidence demonstrated counsel refused to settle the case so that they could generate additional fees, *see Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 608 (7th Cir. 1982) ("Counsel's refusal to settle the case earlier for an amount only slightly less than the amount ultimately agreed upon, accompanied by his statement that [defendant] could afford to pay more, provide sufficient support for the district court's conclusion that he had unreasonably prolonged the litigation.").

None of these scenarios apply in this case.  According to the parties' briefing, Defendants offered to settle the case on two separate occasions for $3,000 or slightly less than this amount. ECF No. 170, at 5-6; ECF No. 165, at 1, 10.  On the first occasion that Defendants offered this amount, Plaintiff, at the time, believed that she was entitled to approximately $7,560.00 in damages.  ECF No. 170, at 5.  Accordingly, she was hesitant to settle the case for less than half that amount.  By the second time Defendants offered this amount, five months had passed and Plaintiff had incurred significant attorney's fees.  *Id.* at 6.  Defendants' offer failed to provide much compensation to address these fees.  In light of these considerations, I cannot conclude that the failure of settlement negotiations was due to Plaintiff's failure to seriously engage in settlement negotiations or a desire to unnecessarily prolong the litigation.

### 2.  Time Spent on Pre-Summary Judgment Dispositive Motions.

Defendants also argue that the 7.4 hours Plaintiff expended on pre-summary judgment motions should not be collectable, because Plaintiff did not prevail on its Motion for Summary

---

[3] Although the Fourth Circuit held that the district court did not abuse its discretion in considering the defendant's settlement position, it emphasized that the district court's consideration of such did not actually impact the amount of fees it awarded.  *McAfee*, 738 F.3d at 91 ("[A]lthough the court expressed disapproval of [defendant]'s apparent failure to seriously engage in settlement negotiations, the court did not alter its lodestar calculations to reflect that disapproval.")

Judgment.  ECF No. 165, at 11.  Defendants confuse what the hours in question relate to.  The 7.4 hours were devoted to opposing Defendants' Motion to Dismiss, which was ultimately mooted by the filing of the Amended Complaint.[4]

### 3.  Time Spent on Summary Judgment Motions.

Defendants argue that many of the billing records in support of the post-summary judgment dispositive motions are duplicative and/or insufficiently detailed regarding who performed what task.  ECF No. 165, at 11.  As referenced above, Defendants fail to identify any specific time entries in support of their argument.  Rather, Defendants simply state their point without elaboration.  *See id.* (stating only that "a review of the billing records reveals that m[o]st of the work on the dispositive motions was duplicative[.]").  Nonetheless, a review of the entries in Exhibit B reveals Defendants' argument lacks merit.  Each entry indicates the specific attorney performing the task and lays out in chronological order the drafting of the brief by Mr. Balashov, editing of the brief by Mr. Melehy, cite-checking of the brief by Mr. Blackmore, and communications with the client regarding changes to the briefing schedule and updates on the status of the case.  *See* ECF No. 154-3, at 4-6.

Defendants further argue that 86.9 hours in preparing an Opposition to a Motion for Summary Judgment is excessive.  ECF No. 165, at 11.  Plaintiff's joint Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment was supported by eighteen exhibits.  *See* ECF No. 90.  As Plaintiff's note, the time required to fully brief their own

---

[4] Although Defendants do not argue that filing the Opposition to the Motion to Dismiss was redundant given the filing of their Amended Complaint, even if they had, the argument would be unsuccessful.  As this Court has held, "however confident [a party] may have been that the[ir motion] would succeed . . . , it was not required to present *only* that ground . . . , nor was it required to wait until after a ruling on its motion . . . , especially where it had identified several alternative arguments supporting its request for [relief]."  *E.E.O.C. v. Freeman*, 126 F.Supp.3d 560, 579 (D. Md. 2015).

Motion for Summary Judgment included time expended on briefing the Reply in support of such. ECF No. 154-1, at 26.  Although the Reply brief is relatively short, its relative length accords with the time records submitted, according to which less than 15 hours of the approximately 87 hours were expended on this portion of the briefing.  ECF No. 154-3, at 6.

Absent any specific argument regarding the appropriate amount of the time that should have been expended opposing Defendants' Motion and advancing their own, or any specific entries which are deficient, I cannot agree with Defendants' arguments.   While the amount of time requested by Plaintiff's counsel is more than some courts have awarded for the briefing of summary judgment, many of those cases have been in other contexts.  For example, "in typical Social Security cases it is reasonable for an attorney to expend between twenty and forty hours." *Roth v. Comm'r, Soc. Sec.*, Civil Case No. SAG-14-62, 2015 WL 567168, at *3 (D. Md. Feb. 10, 2015).  However, even in those cases, "courts cannot drastically reduce awards simply because the attorney has requested compensation for more than forty hours or make reductions with a target number in mind."  *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012) (per curiam).  Courts "must explain why the amount of time requested for a particular task is too high. Any other approach fails to give deference to the winning lawyer's professional judgment . . . ." *Id.*  Nonetheless, upon review of Plaintiff's time entries, I recommend that the following entries be deleted for the following reasons:

- .50 hours of Mr. Balashov's time on July 2, 2019, because Mr. Balashov and Mr. Melehy both seek reimbursement for attending a scheduling conference with the Court, ECF No. 154-3, at 4;

- 3 of the hours on August 13, 2019 that Mr. Balashov devoted to drafting Plaintiff's opposition to Defendants' Motion for Summary Judgment, given the fact that Mr. Melehy had to later substantially revise the brief on two separate occasions, *id.*;

- 1.2 hours on August 28, 2019 that Mr. Blackmore devoted to recalculating damages, because had it not been for Plaintiff's counsel's error, the recalculation would not have been needed, *id.* at 5.

After these reductions, I recommend that Plaintiff be reimbursed for 82.2 hours for time spent on summary judgment motions.

### 4.  Time Spent on Trial Preparation and Trial.

Defendants raise three separate arguments regarding the amount of time Plaintiff's counsel requests related to preparation for trial and attendance at trial.   First, Defendants argue that although Suvita Melehy performed the majority of the work on the case before summary judgment, once trial preparation began, she was replaced by Mr. Balashov who had to repeat much of the work that Ms. Melehy had performed.   ECF No. 165, at 11-12.   This argument overlooks that Mr. Balashov, in addition to Ms. Melehy, was involved in the case in advance of the Court's rulings on summary judgment.   Mr. Balashov, among other things, drafted documents requests, drafted responses to document requests, reviewed documents and consulted with the other Plaintiff's counsel about the case.   ECF No. 154-2, at 18-19.   Absent the identification of any specific entries which are excessive, I cannot agree with Defendants' argument.

Second, to the extent Defendants intend to argue that Mr. Balashov's work in preparation for trial could have been performed by paralegals, the argument again is incorrect.   *See* ECF No. 165, at 12 (stating without elaboration: "Defendants request that the time for trial preparation be reduced by 50 [percent].").   According to Plaintiff's counsel's time entries, Mr. Balashov, among

other things, drafted pre-trial statements, regularly corresponded with the client about the case, edited the joint stipulation, and communicated with opposing counsel. ECF No. 154-3, at 10-13. These are not tasks appropriately performed by a paralegal. Given Defendants' failure to identify any specific time entries supporting its position, I cannot conclude that Mr. Balashov's fees for trial preparation should be reduced.

Third, Defendants argue that Mr. Balashov's work at trial was limited to administrative tasks and therefore should be reduced to $180. ECF No. 165, at 12. Attendance at trial by two attorneys is not per se unreasonable. *See Parker v. Reema Consulting Services, Inc.*, No. TDC-17-1648, 2022 WL 2905475, at *5 (D. Md. Jul. 21, 2022) (holding that the presence of seven attorneys, at trial, as opposed to two, was excessive); *Barrow v. Greenville Independent School Dist.*, No. 3:00–CV–0913–D, 2005 WL 6789456, at *15 (N.D. Tex. Dec. 20, 2005) (explaining that while the presence of two attorneys at trial was reasonable, four was duplicative and required the excising of any time billed for the third and fourth attorneys). For example, while one attorney presents, the other attorney may reasonably coordinate the presence and preparation of witnesses, as well as highlight for the presenting attorney any points that may have been overlooked. That said, Plaintiff must justify the compensation of more than one attorney. As this Court has stated,

> [t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.

*Almendarez v. J.T.T. Enterprises Corp.*, No. JKS 06–68, 2010 WL 3385362, at *5 (D. Md. Aug. 25, 2010) (internal citation and quotation marks omitted). This is consistent with the Court's Local Rules. *See* Appendix B, 1.2.c ("There is no guideline as to whether more than one lawyer for each

party is to be compensated for attending trial.  This must depend on the complexity of the case and the role that each lawyer is playing.").

Although Plaintiff argues that Mr. Balashov performed significant work on the Motion for Summary Judgment and in the preparation of pre-trial materials, ECF No. 170, at 8, she fails to explain what, if anything, he did at trial.  His time entries related to trial simply state "[a]ttending the trial."  ECF No. 172-1, at 9.  Likewise, Plaintiff's Motion lists the tasks he performed at trial, but describes them as primarily administrative.  *See* ECF No. 154-1, at 27 (arguing that Mr. Balashov be compensated for, among other things, taking notes and presenting exhibits electronically).  Accordingly, I recommend that his time at trial be compensated at a reduced rate of $180 per hour.

### 5.  Time Spent on Preparation of the Fee Petition and Related Matters.

Defendants also argue that the hours Plaintiff requests for the preparation of the Fee Petition and related materials is excessive given the relatively short length of the trial in the case. ECF No. 165, at 12.  Although Plaintiff's counsel claim that they expended 88 hours on such, Plaintiff has reduced the hours sought to 58.5.  ECF No. 172, at 2.  Again, Defendants fail to identify any specific entries which they find to be excessive or cite any case law in support of their position.  ECF No. 165, at 12.

As Plaintiff highlights, this Court has previously found that a number of hours well beyond those Plaintiff requests may be reasonable regarding the drafting of a fee petition and reply.  *See Sargeant v. Acol*, No. PWG-15-2233, 2018 WL 276431 (D. Md. Jan. 3, 2018) (finding that approximately 56 hours for the preparation of a fee petition and approximately 36 hours for the preparation of a reply in support of a fee petition was reasonable).  Furthermore, Defendants' argument – that taking more than the hours in a working week to prepare an attorney's fees petition

is unreasonable – misreads Plaintiff's Fee Petition.  While a significant portion of the fees requested relate to the preparation of the Petition, the fees requested include time devoted to preparing and filing the Motion to Modify the Fee Briefing Schedule; reviewing, preparing and sending quarterly reports over the course of a multi-year case; and drafting the Memorandum and Reply in support of the Bill of Costs.  ECF No. 154-3, at 7-8.

Accordingly, I cannot determine that the approximately fifty-eight hours Plaintiff's counsel devoted to, among other things, the preparation of quarterly fee reports, editing the spreadsheet, and briefing the Motion is *per se* excessive, particularly given the Defendants' failure to identify any particular entry or group of entries it finds excessive.  That said, upon review, I recommend that the Court exclude the 5.53 hours Mr. Melehy spent deleting entries that were redundant.  It is inequitable and inconsistent for an attorney to collect additional fees on entries which should not have been included originally.  *Chaten*, 2020 WL 4726631, at *7 ("Plaintiff's counsel should not expect Defendants to compensate them for their mistake[.]").  This is not to say that an attorney cannot collect for time devoted to editing a timesheet.  I leave untouched several other entries by Mr. Melehy and other counsel and staff editing the time entries before presentation to opposing counsel and the Court.  The recommended deletion reflects the principle that counsel should reflect billing judgment when charging for the deletion of redundant entries.

### C.  The Amount in Controversy and the Results Obtained.

Defendants also contest several other categories of fees requested, but, in essence, make the same argument – that the amount of fees awarded should be reduced given the number of claims on which Plaintiff did not prevail.  *See* ECF No. 165, at 9-10 (arguing that fees for pre-summary judgment work, pleadings, written discovery, and depositions should be reduced by eighty percent).  In sum, Defendants argue that because Plaintiff prevailed on only one of her initial

five claims, the majority of fees she has requested should be reduced by eighty percent. *Id.* Although courts "in this Circuit have reduced lodestar amounts to account for the prevailing party's overall success," *Fernandes v. Montgomery County, Md.*, No. SAG–10–752, 2013 WL 6330705, at *6 (D. Md. Dec. 3, 2013), Defendants provide no authority for the type of pro-rata reduction for which they advocate.

As an initial matter, as this Court has stated, where both successful and unsuccessful claims share overlapping facts and legal theories, "any parsing of successful from unsuccessful claims for purposes of billing [is] . . . a difficult and fraught enterprise." *Garcia v. Montgomery County, Md.*, No. TDC-12-3592, 2018 WL 1441189, at *10 (D. Md. Mar. 22, 2018); *see also Randolph*, 780 Fed.Appx. at 230 (same).

Furthermore, the Supreme Court has expressly "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *see Gonzalez*, 2022 WL 3577394, at *4 ("the eighth *Johnson* factor is only one of many factors that a court should consider in calculating an award and does not require that the attorney's fee award be proportionate to the damages recovered." (internal quotation marks and citations omitted)); *Salinas v. Commercial Interiors*, No. 8:12-cv-1973-PWG, 2018 WL 2752553, at *3 (D. Md. Jun. 8, 2018) ("The Supreme Court has opined that a rule requiring proportionality would 'seriously undermine Congress' purpose' and prevents victims who frequently cannot pay counsel at market rates from effective access to the justice system."). "Instead, courts must be mindful that civil rights actions are 'more than a private tort suit benefiting only the individual plaintiffs whose rights were violated.'" *Garcia*, 2018 WL 1441189, at *11 (quoting *Rivera*, 477 U.S. at 574). "A successful plaintiff 'often secures important social benefits that are not reflected in nominal or relatively small damages

awards,' but which warrant the awarding of fees."  *Id.*  Although Defendants explicitly acknowledge that the Supreme Court has rejected their position, they provide no response.  *See* ECF No. 165, at 6 ("Plaintiff argues that a strict application of any proportionality rule is against the public policy interests that are served by fee shifting statutes such as the FLSA, MWHL and MWPCL, and contend that the U.S. Supreme Court has rejected such a proportionality requirement, citing *City of Riverside v. Rivera*").

Plaintiff's counsel, recognizing that Plaintiff failed to succeed on various parts of the case, has substantially reduced the fees that they are seeking.  Among other things, Plaintiff has excluded all hours for: 1) the class action claims, including discovery and discovery disputes relating to such – together amounting to approximately 190 hours, ECF No. 154-1, at 16; 2) the FLSA and MWHL portions of the case – together amounting to 13.4 hours, *id.*; 3) Plaintiff's second dispositive motion, as well as efforts related to asking Judge Titus to certify his rulings as final judgments – together amounting to 6.1 hours.  *Id.*  Additionally, Plaintiff's counsel has already agreed to reduce the amount of fees they are seeking for pre-summary judgment time by fifteen percent, and then by an additional forty percent, and post-summary judgment by five percent, to account for the fact that Plaintiff ultimately did not succeed on all her claims.  ECF No. 154-1, at 18-19.  These reductions adequately address the extent to which Plaintiff did not succeed on her claims, given the Supreme Court's explicit rejection of Defendants' position that a prevailing party's fees must be reduced on a pro rata basis based of the number of claims on which it is successful. *See Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007) (finding courts may not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall."); *Thomas*, 2016 WL 258633, at *6-7 (awarding plaintiff the entirety of their requested fees, where the plaintiff recovered only twenty-eight percent of the

amount it requested earlier in the case).   Where courts have reduced fees, they have made reductions similar to those Plaintiff's counsel has already made.  *Jackson v. Estelle's Place, LLC*, 391 Fed. App'x 239, 244 (4th Cir. 2010) (affirming district court's reduction of attorney's fees by twenty-five percent to account for "modest value" of the successful claims); *Andrade v. Aerotek, Inc.*, 852 F.Supp.2d 637, 644 (D. Md. 2012) (reducing plaintiff's fee by twenty-five percent and awarding $110,115.94 in fees in a nationwide class action lawsuit that resulted in a judgment of $13,940.08); *Sakala v. Milunga*, No. PWG-16-0790, 2018 WL 5724010, at *11 (D. Md. Oct. 31, 2018) ("I recommend that Plaintiff's request for attorneys' fees be reduced by [twenty-percent]. Plaintiff's monetary award of $29,970.03 is less than half of the base-level amount she sought in her wage and hour claims"); *Garcia*, 2018 WL 1441189, at *11-12 (finding that where a Plaintiff initially sought $1,000,000, but received only $45,000, a thirty-five percent reduction in fees was appropriate); *Butler v. DirectSAT USA, LLC, et al.*, No. DKC-10-2747, 2016 WL 1077158, at *7 (D. Md. Mar. 18, 2016) (reducing fee by one third from $387,586 to $258,390.67 when final settlement amount of $36,000 was significantly lower than the demand of $300,644.94); *Almendarez*, 2010 WL 3385362, at *7 (reducing lodestar amount of $112,077.50 by twenty-five percent to $84,058.00 to account for awards that "were so low in relation to what they sought as to render their victory close to purely technical").

Nor does the fact that the amount of fees requested overshadows the amount of damages dictate a further reduction, contrary to Defendants' claims, ECF No. 165, at 6. *See Overbey v. Mayor and City Council of Baltimore*, No. DKC 17-1793, 2021 WL 3037458, at *10 (D. Md. Jul. 19, 2021) ("The proportionality of the fee award to the damage award [in this civil rights case] is inconsequential.").   The Fourth Circuit has recognized that "[a]wards of attorneys fees substantially exceeding damages are not unusual in civil rights litigation." *Thorn v. Jefferson-*

*Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006). This is particularly true in cases arising out of unpaid wages. *Gonzalez,* 2022 WL 3577394, at *4. These cases often involve "vulnerable plaintiffs" who "may be vindicating important rights that entitle them to relatively modest compensation," *Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639, at *4 (D. Md. June 8, 2015), and a rule requiring proportionality "would 'seriously undermine Congress' purpose' and prevents victims who frequently cannot pay counsel at market rates from effective access to the justice system." *Salinas*, 2018 WL 2752553, at *3 (quoting *Rivera*, 477 U.S. at 576).

Accordingly, the Fourth Circuit and courts in this District have regularly awarded attorney's fees that are multiples of the damages awarded to the Plaintiff. *See Rivera*, 477 U.S. at 565-67 (approving a fee award of $245,456.25 on the basis of a damage award of $33,350); *McAfee*, 738 F.3d at 85-86 (awarding an attorney $100,000 in fees where the Plaintiff recovered less than $3,000); *Mercer v. Duke Univ.*, 401 F.3d 199, 211–12 (4th Cir. 2005) (affirming award of $349,243.96 in attorneys' fees in Title IX suit resulting in nominal damages); *Wadsworth v. Clindon*, 846 F.2d 265, 266–67 (4th Cir. 1988) (affirming award of $13,317.00 in attorneys' fees in Fair Housing Act suit resulting in $1,000.00 in damages); *Wolfe v. Routzahn*, 953 F.Supp.2d 627 (D. Md. 2013) (awarding plaintiff's counsel $100,000 in fees where plaintiff recovered nominal damages); *Andrade*, 852 F.Supp.2d at 644 (awarding $110,115.94 in fees in a nationwide class action lawsuit that resulted in a judgment of $13,940.08); *Polk v. Montgomery County, Md.*, 689 F.Supp. 556, 560 (D. Md. 1988) (approving a fee award of $4,651.86 where the plaintiff recovered one dollar); *Parker*, 2022 WL 2905475, at *7 (finding that award of $475,870.50 in attorney's fees was "entirely appropriate" where plaintiff recovered only $83,000); *Matias Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 3927323, at *8, 11 (D. Md. Aug. 20, 2019) (awarding $138,037.78 in attorneys' fees in FLSA case where plaintiff won "a little less than one-third the

amount" in damages and providing multiple examples of "proportionally similar" awards in similar cases in the District of Maryland); *Atkins v. Sunbelt Rentals, Inc.*, Civ. No. PWG-14-1717, 2016 WL 3647610, at \*4-5 (D. Md. June 30, 2016) (listing cases and determining an award of $95,400 in fees was reasonable where plaintiff settled his FLSA claim for $30,000 after two-years of litigation, but before trial commenced); *Fordyce v. Prince George's County*, No. DKC 13–0741, 2015 WL 6447475, at \*6 (D. Md. Oct. 22, 2015) (awarding $69,567.75 in attorney's fees where the Plaintiff was awarded $2,000 in compensatory damages); *Chapman v. Ourisman Chevrolet Co., Inc.*, No. AW-08-2545, 2011 WL 2651867, at \*13, \*18 (D. Md. July 1, 2011) (awarding $37,292.52 in fees for a recovery of $3,100 in a FLSA case); *Almendarez*, 2010 WL 3385362, at \*1, \*7 (granting $84,058 in fees for an underlying recovery of $3,300, after making significant reductions from the plaintiff's initial request).

The appropriate comparison is "the amount of damages sought to the amount awarded." *McAfee*, 738 F.3d at 92-93.  Additionally, "nonmonetary goals, such as vindicating rights and deterring future violations, can be served by [unpaid wages] litigation and can be a measure of a plaintiff's success." *Butler*, 2016 WL 1077158, at \*6.  The Court's determination that the Defendants' practices violated Maryland state law provided an additional benefit to the Plaintiff. *See id.* at \*6 (finding limited non-monetary goals were vindicated where the parties agreed to a settlement and no determination was made that Defendants violated the FLSA).

The merits of Defendants' individual arguments do not dictate a different result.  For example, Defendants argue that "virtually all of the time" at the thirteen depositions Plaintiff took was devoted to claims that were ultimately unsuccessful.  ECF No. 165, at 9-10.  Beyond this blanket statement, Defendants present no evidence in support of their assertion. *See id.*  As Plaintiff notes, four of the deponents' transcripts were introduced as joint exhibits at trial, including

the transcript of the Federal Rule of Civil Procedure 30(b)(6) deponents in the case. ECF No. 154-1, at 23. Furthermore, the remaining nine witnesses were listed as potential witnesses at trial by Plaintiff, and Defendants indicated they may call the same witnesses, as well. *Id.*

In sum, *Johnson* does not require an across-the-board numerical reduction based on the number of claims that are successful as opposed to unsuccessful. Rather, it merely requires reductions of the type that Plaintiff has already made.

### D. The Other Johnson Factors

Although most of the other *Johnson* factors are "subsumed in the rate and hour analysis", *Andrade*, 852 F.Supp.2d at 646, I address them briefly here to the extent that the parties have addressed them separately in their briefing. Specifically, Defendants argue that "at the end of the day, this case was a very simple case about straight time[.]" ECF No. 165, at 13. Accordingly, in Defendants' view, the novelty and difficulty of the questions raised, as well as the skill required to properly perform the legal services rendered was limited. *Id.* at 13-14.

Defendants' characterization over-simplifies the issues at dispute in this case. Although the final issue to be adjudicated was whether the Plaintiff was compensated for time worked, this ignores the litigation that preceded the determination that such a claim was viable. Notably, Defendants, in their second Motion for Summary Judgment, argued that the Plaintiff could not recover under the MWPCL if she was an employee who could not recover under the FLSA and MWHL. ECF No. 112 at 2. The Court ultimately rejected this argument, explaining that recovery under the MWPCL was not contingent upon a finding that Plaintiff could recover under one of the other statutes. ECF No. 122 at 4-5. In this regard, Plaintiff's victory established a significant point of law that, at a minimum, does not warrant any further departure downwards than the Plaintiff and the Court have already taken.

### E.  Plaintiff's Bill of Costs

In addition to attorney's fees, Plaintiff also seeks reimbursement of costs for the following amounts: a) $400 for fees of the clerk; b) $1,273.77 for fees for service of summons and subpoena; c) $11,380.38 for fees for printed or electronically recorded transcripts necessarily obtained for use in the case; d) $3,622.40 for fees for disbursements for printing; e) $195 for fees for witnesses; and f) $600 for fees for exemplification and the costs of making any copies where the copies were necessarily obtained for use in the case.  ECF No. 155, at 1.  Plaintiff additionally requests $5,700 for postage, computerized on-line research, courier expenses, and travel expenses.  ECF No. 154-1, at 33-35.  Altogether, Plaintiff requests $23,171.55 in reimbursable costs.  *Id.*

Rule 54(d)(1) provides that costs "should be allowed to the prevailing party" after trial "unless . . . a court order provides otherwise."  Fed. R. Civ. P. 54(d)(1).  In this District, the Clerk of Court is entrusted with the taxation of certain costs in the first instance.  *See* U.S. District Court for the District of Maryland Guidelines for Bills of Costs § I.A; *see also* Fed. R. Civ. P. 54(d)(1) (providing that the "clerk may tax costs on 14 days' notice").  "Examples of types of costs that have been charged to losing defendants include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying."  *Almendarez*, 2010 WL 3385362, at *7.

Although "the rule creates the presumption that costs are to be awarded to the prevailing party," *Cherry.*, 186 F.3d 442, 446 (4th Cir. 1999), district courts have the discretion to determine which costs to award.  *Roy v. County of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998).  Courts may deny costs if supported by "good reason."  *Ellis v. Grant Thornton LLP*, 434 Fed. App'x. 232, 235 (4th Cir. 2011). "Good reason" includes "(1) misconduct by the prevailing party; (2) the unsuccessful party's inability to pay the costs; (3) the excessiveness of the costs in a particular

case; (4) the limited value of the prevailing party's victory; or (5) the closeness and difficulty of the issues decided." *Id*. "Costs may be denied where a presumptive cost award carries with it an 'element of injustice.'" *U.S. E.E.O.C. v. Enoch Pratt Library*, No. 8:17-cv-02860-PX, 2022 WL 4017294, at *1 (D. Md. Sep. 2, 2022) (quoting *Ellis*, 434 F. App'x. at 235).

Each of the costs Plaintiff has identified are recoverable. Nonetheless, Defendants argue that the Court should not award Plaintiff's costs. I address each of Defendants' arguments below.

### A. Limited Value of the Victory

In Defendants' Opposition to Plaintiff's Motion for Attorney's Fees and Costs, they argue – without support or citation – that Plaintiff's costs should also be reduced by eighty percent because they prevailed on only one of the five claims she originally advanced. ECF No. 165, at 12. Although courts may consider "the limited value of a prevailing party's victory" in awarding costs, courts in this District have done so to exclude costs which were unrelated to the victory, rather than make the type of wholesale pro-rata reduction that Defendants ask for. *See Harry and Jeanette Weinberg Foundation, Inc., v. St. Marks Avenue, LLC*, No. GLR-15-3525, 2017 WL 11452997, at *2 (D. Md. Nov. 14, 2017) (explaining that "the deposition of [the witness] for which the . . . Defendants seek costs was not related to defending against the[] claims [on which they prevailed]"); *DT Consultants, LLC, v. Howmedica Osteonics Corp.*, No. GLR-17-1697, 2021 WL 2826769, at *6 (D. Md. Jul. 7, 2021) (rejecting requests for costs related to collection of a judgment before the Court entered a final judgment). Nonetheless, even if the rule may be applied in other contexts, for the same reason the Supreme Court has rejected proportionality reductions of fees, these types of reductions would also be inappropriate regarding costs. Furthermore, Plaintiff has already reduced its costs to account for this factor. *See* ECF No. 155-1, at 2 (noting that in an exercise of billing judgment, Plaintiff reduced the total photocopy expenses by $3,000).

### B.   Deposition Transcripts

Defendants do not contest that costs related to the production of deposition transcripts are recoverable, but argue that portions of some or all of the depositions were related to matters relevant to a parallel case, *Ramnarine v. Rainbow Child Development Center, Inc. et al*, No. 17-cv-2262 (D. Md. filed Aug. 9, 2017), in which the Court granted Defendants summary judgment. Defendants fail to identify any particular depositions, let alone specific language in any deposition transcript, supporting their argument.  ECF No. 166, at 1-2.  In fact, beyond generally stating their position, Defendants fail to provide any support for their argument.  Even if Defendants had done so, their argument would have limited persuasive value.  As Plaintiff highlights, only four of the deposition transcripts were captioned as relating to the parallel case.  ECF No. 171, at 3-4.  Of these, three of the deposition transcripts were admitted at trial and the fourth was used to counter Defendants' assertions that Plaintiff was a salaried employee.  *Id; see also Wyne v. Medo Industries, Inc.*, 329 F.Supp.2d 584, 589 (D. Md. 2005) ("[T]hese depositions are properly taxable because they were reasonably necessary at the time of their taking and were submitted in connection with the event which terminated the litigation.").

Separately, Defendants argue that the deposition costs are inflated because they include three separate charges for wait time during the depositions of three separate witnesses.  ECF No. 166, at 2.  Defendants argue that one of the wait time charges was the result of Plaintiff's failure to properly schedule the deposition.  *Id.*  Defendants provide no explanation of why the other two wait time changes should be excluded.  *Id.*  Plaintiff, in turn, provides no explanation as to the wait time which Defendants allege was due to Plaintiff's scheduling error.  See ECF No. 171, at 6 ("Plaintiff's counsel does not recall why there was wait time at these depositions.").  Accordingly,

$81.25 for wait time associated with the deposition of Raelynn Larkin shall be excluded. Defendants have failed to demonstrate why the other two wait times should likewise be excluded.

Defendants also argue that $1,194 for the expedited transcript of Kim T. Mitchell's deposition is not taxable. ECF No. 166, at 2. While costs for expedited transcripts are generally not taxable, they may be if necessary to the litigation of the case. *Fogleman v. ARAMCO (Arabian American Oil Co.)*, 920 F.2d 278, 285 (5th Cir. 1991) (stating that deposition costs reasonably incurred for trial preparation or for use at trial, "rather than for the mere convenience of counsel," constitute taxable costs). "Whether an expense is reasonably necessary to the litigation is a determination made by the court in light of the circumstances of the particular case." *Mayor and City Council of Baltimore v. CSX Transportation*, No. RDB 04-2348, 2006 WL 8456572, at *1 (D. Md. Oct. 3, 2006) (citing 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2676 at 429 (3d ed. 1998) (collecting cases)). "The concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." *Cherry.*, 186 F.3d at 449. Plaintiff took Ms. Mitchell's deposition on January 19, 2018, requesting an expedited transcript so she could use it in her Opposition to Defendants' Motion to Quash Plaintiff's subpoena to Wells Fargo, which was filed just ten days later. ECF No. 36-2. Accordingly, Plaintiff has adequately justified the need for an expedited version of the transcript.

### C.  Costs for Printing and Copying

Finally, Defendants contest Plaintiff's request for $3,622.40 in printing costs, arguing that Plaintiff has provided insufficient detail regarding what Plaintiff's counsel specifically printed. ECF No. 166, at 2. Contrary to Defendants' argument, Plaintiff has provided information regarding the separate time periods during which copying and printing costs were incurred, and

during each time period, what copying and printing was necessary for. *See e.g.* ECF No. 155-2, at 4 ("in April, May and June 2021, the Plaintiff incurred combined copy expenses of $1,743.20, which are attributable to copies used to create the exhibit binders. There were three sets of exhibit binders – Plaintiff's, Joint and Defendants – and the Court required three sets of the Plaintiff's exhibits and joint exhibits."). Defendants fail to acknowledge this explanation, explain why it is insufficient, state what level of detail was needed, or provide any support for the presentation of additional detail.

In passing, Defendants argue without any further explanation or support that the amount of copying and printing was unreasonable given the nature of the case. *See* ECF No. 166, at 2 ("The issue for which Plaintiff prevailed in this case was a very narrow issue of payment of straight time and would have resulted in very limited copying."). As an initial matter, I need not consider any arguments raised in passing. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). Nonetheless, I cannot conclude that Plaintiff's requested copying costs related to a case that lasted four years and resulted in a three-day trial is unreasonable. *Wyatt v. Owens*, No. 7:14-cv-492, 2018 WL 10613184, at *16 (D. Md. Jan. 23, 2018) ("Given the court's experience, and applying a copying charge of ten cents per page, I find a total printing and copying charge of $3,500.00, which would allow for printing and copying 35,000 pages, to be reasonable. I will reduce [plaintiff]'s expenses for copies to $3,500.00.").

Defendants also contest whether Plaintiff should be awarded $600 for costs related to copying. ECF No. 166, at 2. Absent the identification of any specific records which were irrelevant to the case or should not have been copied, or a justifiable baseline for how much copying should have occurred, the Court has no means of determining on what basis Defendants believe that some unspecified portions of the copies should have been excluded. As Plaintiff

explained, the $600 requested are specifically for reimbursement of the amounts she paid Wells Fargo to produce documents in response to Plaintiff's third-party subpoena.  ECF No. 155-3, at 2. In support, Plaintiff provides copies of the checks provided to Wells Fargo.  *Id.* at 63-64. Accordingly, contrary to Defendants' claims, Plaintiff has adequately justified and explained the $600 for which she seeks reimbursement.

## CONCLUSION

For the aforementioned reasons, I recommend that Plaintiff's counsel be awarded $127,573.63, which reflects a reduction in the hourly rates for the attorneys and paralegals discussed above, as well as the exclusion of particular hours, noted above, related to the preparation of the Fee Petition and post-summary judgment dispositive motions.

Additionally, I recommend that Plaintiff's counsel be awarded $23,090.30, reflecting an award of all of Plaintiff's requested costs minus $81.25 resulting from the wait time charge incurred during one of Plaintiff's depositions.

The Clerk of Court is directed to mail a copy of this Report and Recommendation to the parties.

Objections to this Report and Recommendation must be served and filed within 14 days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

Date: November 4, 2022                            _____/s/_____

                                                 Ajmel A. Quereshi
                                                 United States Magistrate Judge